UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARI OGOGO,<br><br>    Plaintiff,<br><br>    v.<br><br>JAYKAY, INC., a California corporation, MANAGEMENT SOLUTION, LLC, a California Limited Liability Company, E3 HR, Inc., a New Jersey Corporation, and DOES 1-50, inclusive,<br><br>    Defendants. | No. 2:18-cv-03203-JAM-DB<br><br>**ORDER GRANTING DEFENDANTS'**<br>**MOTIONS TO DISMISS** |

    Plaintiff Chari Ogogo brings this wage and hour class action and Private Attorney General Act ("PAGA") action against JayKay Medical Staffing Inc., Management Solution LLC, and E3 HR Inc., ("Defendants"). Ogogo sues on behalf of contractors providing medical services in California state prisons for unpaid wages, missed meal periods, missed rest breaks, inaccurate wage statements, and pay due upon separation. First Am. Compl. ("FAC"), ECF No. 10. Ogogo proposed classes for each alleged violation.

1

Defendants filed Motions to Dismiss under Rule 12(b)(6). ECF Nos. 9 ("JayKay Mot."), 13 ("E3 HR Mot."), 15 ("Management Mot."). Management Solution filed a Motion to Strike Class and PAGA Allegations (ECF No. 17), and two requests for judicial notice (ECF Nos. 16, 18). E3 HR also filed a Request for Judicial Notice. ECF No. 14. JayKay joined the motions to dismiss and motion to strike. ECF No. 20. Ogogo opposed the motions to dismiss (ECF Nos. 24-27), the motion to strike (ECF No. 28), the request for judicial notice (ECF No. 29), and notice of joinder (ECF No. 30). Defendants replied in support of the motion to dismiss (ECF Nos. 32 and 33) and the motion to strike (ECF No. 34). The Court DISMISSES Plaintiff's claims against Management Solutions and E3 HR WITHOUT PREJUDICE because the complaint does not sufficiently allege that they employed Ogogo. Dismissing E3 HR deprives the Court of subject matter jurisdiction under CAFA. The Court, therefore, cannot decide any further issues. Absent amendment, the Court will REMAND the case to state court under § 1447(c).[1]

I.   FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND

Chari Ogogo was a clinical laboratory scientist contractor at Solano State Prison. FAC ¶ 8. She alleges she was jointly employed by Defendants Management Solution, JayKay, and E3 HR. Management Solution and JayKay are vendor management companies in healthcare that contract with CDCR to place temporary medical professionals. E3 HR is a payroll processing company. Id. at

---

[1] This motion was determined to be suitable for decision without oral argument. E.D. Cal. L.R. 230(g). The hearing was scheduled for April 2, 2019.

2

¶ 19; Management Mot. 8, 24:28. Ogogo alleges she and the proposed classes were "employed by JayKay, [] providing time cards to Management Solution, [and] issued wage statements by E3 HR, Inc." FAC ¶ 21.

Ogogo alleges Defendants "carried out a joint scheme, business plan or policy" requiring class members "to follow practices and policies impacting [employees'] day to day activities," and that these "interrelated business structures and functions" "work[ed] as a subterfuge" to prevent aggrieved employees "from bringing claims against their joint employers." Id. at ¶¶ 16-17. Ogogo alleges JayKay and Management Solution were authorized to "fire, demote, and discipline." Id. at ¶ 17.

To support her claims, Ogogo cites: (1) the employment agreement she signed with JayKay to work as an at-will Clinical Lab Scientist at Pleasant Valley State Prison,[2] (2) an onboarding email with reporting instructions for Ogogo's start date at Solano State Prison that Management Solution sent to JayKay with the subject "SOL 1st day start instructions CLS Chari Ogogo" (Ex. B "onboarding email"), and (3) her wage statement, bearing each Defendant's company name. Id. at Ex. A-B.

A. Minimum Wage and Unpaid Overtime Claims

Ogogo alleges Defendants failed to pay employees the minimum wage for all hours worked and owed unpaid overtime since employees were required to attend an unpaid orientation. Id. at ¶ 26. Plaintiff quotes the employment agreement:

---

[2] The JayKay employment agreement was not attached to the complaint as an exhibit. The complaint references and quotes the employment agreement, (¶ 26) which is attached to Plaintiff's PAGA Notice to Defendants (ECF No. 14-4, Ex. 1).

3

> The Client Facility may require employee to attend a mandatory training and/or orientation . . . to familiarize him/her with the Facility rules, regulations and safety protocols . . . orientation and/or training for EMPLOYEES is considered as UNPAID since most clients do not pay for orientation and/or training.

Id. at ¶ 26.

Ogogo also alleges the mandatory bag checks upon entry and exit were conducted "on staff time," but unpaid. Id. at ¶ 27. Ogogo cites the onboarding email for support:

> Staff will have to open their bags for inspection every time they enter and exit the institution. If there is a questionable item, the front entrance office will ask the staff member to return to their car to dispose of the item. If Staff members clothing is questionable the front entrance officer may instruct staff to return home to change their clothing. This will be done on staff time.

Ex. B, ECF No. 10

B. Meal Periods Claims

Ogogo further alleges Defendants violated Labor Code § 512 by failing to advise employees of their right to receive thirty-minute uninterrupted meal periods within the first five hours of a shift. Id. at ¶ 33. Ogogo alleges employees were told they could not take a meal period or leave their station except to use the bathroom, and then, employees were "required to take their meal periods on premises," causing Ogogo and employees to "effectively work through their meal periods." Id. at ¶¶ 33-34. She also alleges Defendants never asked employees to sign a legally compliant on-duty meal period form. Id. And, even if employees were able to leave, meal periods would be cut short by bag checks. Id.

///

4

C. Off-Duty Rest Period Claims

Ogogo further alleges Defendants "actively prevented" Plaintiff from taking off-duty rest periods because employees were "prohibited from leaving the workspace during their shifts." Id. at ¶¶ 41-42. Again, Ogogo alleges that mandatory bag checks take 20 minutes of unpaid time, effectively denying any off-duty rest period. Id. at ¶ 42.

D. Derivative Claims

Plaintiff's remaining claims are derivative of the wage and hour violations. These include: failure to pay wages owed on a timely basis within seven days on the close of payroll period for a regular and consistent basis (¶¶ 44-46), non-compliant wage statements (¶¶ 47-55), failure to pay all wages owed upon termination, (¶¶ 56-57), UCL (¶¶ 105-115), and PAGA and other penalties (¶¶ 116-124).

Ogogo initially sued in San Joaquin Superior Court (Case No. STK-CV-UOE-2018-14095). See Notice of Removal, Ex. A, ECF No. 1. Management Solution removed the case to federal court on December 13, 2018 as a diversity action under the Class Action Fairness Act of 2005 (CAFA), Pub. L. No. 109-2, 119 Stat. 4. Id. at 1-15; 28 U.S.C. § 1332(d).

On January 11, 2019, Ogogo filed the operative First Amended Complaint, bringing eight claims: (1) failure to pay minimum wages (§§ 1194, 1194.2, 1197, 1197.1); (2) failure to provide off-duty meal periods and/or pay meal period premiums (§§ 226.7, 512, and IWC Wage Order 4-2001); (3) failure to provide off-duty rest breaks and/or pay missed rest break premiums (§ 226.7, IWC Wage Order 4-2001); (4) failure to provide complete and accurate

wage statements (§§ 226(a) (1,2,5,9); 226.3)); (5) failure to identify the name of the employer on the wage statements (§§ 226(a)(8) and 226.3); (6) failure to pay all wages due to former employees upon termination "waiting time penalties" (§§ 201-203); (7) unfair business practices (§§ 17200-17204); and (8) PAGA relief and other penalties (§§ 2699 and 558).

II. OPINION

A. Judicial Notice

Management Solution requests judicial notice of Plaintiff's amended PAGA notice (Ex. A); the 2018 CDCR operations manual title page, table of contents, table of acronyms, and page 1 of chapter 1 (Ex. B); Section 33020.4 (Ex. C); Section 50250.15 (Ex. D); a copy of an August 12, 2014 memorandum with the subject line "Proper Workplace Attire," disseminated to all staff from Solano State Prison Warden E. Arnold and CEO Lori W. Anderson; (Ex. E), and a copy of a map of CDCR Institutions, (Ex. F). Management Mot., ECF Nos. 16, 18.

E3 HR requests judicial notice of Plaintiff's FAC (Ex. A); CDCR webpages relating to the Solano and Pleasant Valley State Prisons (Ex. B); declaration of Amy Deak submitted in support of Management Solution's Notice of Removal (Ex. C); Plaintiff's PAGA notice and exhibits (Ex. D); and Plaintiff's original complaint (Ex. E). E3 HR Mot., ECF No. 14.

The Court may consider matters subject to judicial notice and documents incorporated by reference in the complaint. U.S. v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003). Since Plaintiff referenced the PAGA notice and exhibits in her complaint, the Court will take notice of these documents.

Additionally, the Court may take notice of public records and government documents available from reliable sources on the internet, such as websites run by governmental agencies and the facts included therein. See Kater v. Churchill Downs Inc., 886 F.3d 784, 788 n.3 (9th Cir. 2018). Therefore, the Court will consider the CDCR webpages, manual, and memorandum as government documents and the original complaint and Deak declaration as public records on the docket. Requests for judicial notice, ECF Nos. 14, 16, 18 are GRANTED.

B. Motion to Dismiss

1. Legal Standard

Dismissal under Rule 12(b)(6) "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." See Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). Rule 8 "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2)). While detailed factual allegations are not required at the pleading stage, a complaint must contain "more than an unadorned, the defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The claim to relief must be plausible on its face. Id. A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action"— the right to relief must be more than speculative. Twombly, 550 U.S. at 555; see also Iqbal, 556 U.S. 662, 678 (2009)("Threadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice").

On a motion to dismiss, a district court must accept all material allegations in the complaint as true and construe them in the light most favorable to the nonmoving party. See NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986). But Courts "are not bound to accept as true a legal conclusion couched as a factual allegation." Iqbal, 556 U.S. at 678 (internal quotation and citation omitted).

A plaintiff suing multiple defendants "must allege the basis of his claim against each defendant." Gauvin v. Trombatore, 682 F. Supp. 1067, 1071 (N.D. Cal. 1988). Plaintiff must specifically identify the activities alleged to each defendant, so the defendant can plead intelligently. Van Dyke Ford, Inc. v. Ford Motor Co., 399 F. Supp. 277, 284 (D. Wis. 1975).

### 2. Analysis

Defendants E3 HR and Management argue Ogogo's claims must be dismissed because neither party employed Ogogo. Defendants argue Ogogo was at least jointly employed by CDCR, a public agency exempt from liability for nearly all alleged violations. Management Mot. 8:13-17; E3 HR Reply 6:7-12; Cal. Lab Code § 220(b). Plaintiff argues she was not employed by CDCR because she did not interview or apply with the prisons, was required to wear a contractor badge on-site, and was required to list the name of her employer when she signed in and out of the facility. FAC ¶ 23.

Defendants also argue Plaintiff lacks standing, fails to state a claim, violates Rule 8 by reciting statutes and making conclusory allegations without connecting how she was harmed by

Defendants' actions, and fails to distinguish Defendants. Management Mot. 9:1-2. The Court addresses each claim in turn.

### a. Joint Employers

The Court may only find Defendants liable if they employed Ogogo and the proposed classes. Martinez v. Combs, 49 Cal. 4th 35, 49 (2010). While Ogogo is not required to conclusively establish Defendants were her joint employers at the pleading stage, she must "at least allege some facts in support of this legal conclusion." Johnson v. Serenity Transp., Inc., 141 F. Supp. 3d 974, 988 (N.D. Cal. 2015)(citations omitted). Moreover, Plaintiff must demonstrate *each* employer "violated the terms of the specific Labor Code provision at issue." Noe v. Superior Court, 237 Cal. App. 4th 316, 333 (2015)(emphasis added).

Defendants are joint employers if they exercise control over "wages, hours or working conditions." Martinez v. Combs, 49 Cal. 4th 35, 64 (2010). Control over any one of these three aspects triggers employer liability under California wage and hour law. Id. at 59; see also Haralson v. United Airlines, Inc., 224 F. Supp. 3d 928, 938-44 (N.D. Cal. 2016)(rejecting Defendant's argument that something more than supervision is required, such as "hiring and firing power").

A subcontractor that controls a single aspect of employment can still be subject to employer liability. See Torres v. Air to Ground Servs., Inc., 300 F.R.D. 386, 395 (C.D. Cal. 2014). The Martinez test covers "situations in which multiple entities control different aspects of the employment relationship," and is intended to be "broad enough to reach through straw men and other sham arrangements to impose liability for wages on the actual

employer." 49 Cal. 4th 35, 71. Specifically, "control over how services are performed is an important, perhaps even the principal, test for the existence of an employment relationship." Id. at 76.

Still, some relationships are too attenuated to create employer liability. In Ochoa, a franchisor required the franchisee to use timekeeping software, hired business consultants to monitor and advise the franchisee, and recommended different crew schedules and staffing protocol. Ochoa v. McDonald's Corp., 133 F. Supp. 3d 1228, 1236 (N.D. Cal. 2015). But the franchisor's actions did not create employer liability, because the franchisee made the hiring, firing, wage, and staffing decisions. Similarly, a payroll processing company that generated paychecks, completed timecards, conducted employment eligibility verifications, and other human resources tasks was not an employer of the hiring company's employees. Futrell v. Payday California, Inc., 190 Cal. App 4th 1419, 1432 (2010). The payroll processing company did not control wages, meaning they did not exercise the "power or authority to negotiate and set an employee's rate of pay." Id. In the context of an employer that contracts with another entity like a payroll company, an employee cannot sue the payroll company for an alleged breach of its obligations under its contract with the employer. Goonewardene v. ADP, LLC, 6 Cal. 5th 817, 836 (2019).

Plaintiff's allegations that Management Solution "provided timecards" and E3 HR "issued wage statements" does not confer employer liability. FAC ¶ 21. Management Solution argues CDCR/CCHCS outsourced management of staffing companies like

JayKay to Management Solution, but "nothing about its contractual relationships with CDCR/CCHCS and JayKay[] creates an employment relationship between Management Solution and an employee of JayKay." Management Mot. 8:24-28, 9:1-4. To be sure, Management Solution's sending the "1st Day Start Instructions" falls short of Martinez's instruction to examine whether the potential employer "hired and fired plaintiffs, trained and supervised them . . . and set their hours, telling them when and where to report to work and when to take breaks." 49 Cal. 4th at 72. Instead, Management Solution acted as a conduit of information for JayKay and CDCR's instructions.

While Management Solution may require JayKay use a specific timekeeping procedure, just like the franchisor required in Ochoa, Management Solution does not control working conditions. The onboarding email explains that working conditions fall under CDCR's discretion. For example, Management Solution can only accept approved timecards from the CDCR facility and employees must obtain a signature on their timecard from a CDCR supervisor for any overtime worked. FAC, Ex. B.

Ogogo has even weaker link to E3 HR. As in Futrell, E3 HR does not transform into an employer simply because it processes payroll, issues and prints the wage statements, or because the company logo appears on the paystub. The Court need not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." In re Gilead Scis. Sec. Litig., 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted). Setting aside the conclusory allegations, all that remains are the onboarding email and the paystub. These

allegations demonstrate E3 HR and Management Solution's control was so limited, neither are liable as employers.

Ogogo's allegations against JayKay, however, satisfy the Martinez control test. JayKay provided the employment agreement, set the hourly rate of pay, and could fire Ogogo for cause. Employment Agreement, LWDA Notices, ECF No. 14-4, Ex. 1 at §§ 1, 16.

It is true that CDCR retained more control than JayKay. The employment agreement shows CDCR exercised control over the most important aspect of operations—how services were performed—and that any control JayKay wielded over wages was secondary to CDCR's control of hours and working conditions in the facility. CDCR could change the terms of the agreement "without notice" ("These changes are made by the Client and are not under the control of JayKay Staffing, our Employees, or Officers."). Id. at 5. CDCR also controlled hours and working conditions: "Work hours may vary according to the duties performed and in accordance with Client Facility's policy and procedures. If the Facility requires a job schedule change, employee understands and agrees that JayKay, Inc. must comply with its requirements." Id. at 1, § 4. Scheduling was at the discretion of the CDCR facility and overtime was "only given at the discretion of the Authorized Supervisor at the Client Facility." Id. at 2, § 4. Eligibility for holiday overtime pay was contingent on whether the CDCR facility observed the holiday. Id. CDCR rules, regulations, and security protocols governed the way JayKay staffed contractors.

But the pleading requirements do not task Ogogo with showing that JayKay and CDCR exercised equal control. Rather, she need

only allege "some facts in support of th[e] legal conclusion" that JayKay exercised enough control to be considered a joint employer. See Johnson v. Serenity Transp., Inc., 141 F. Supp. 3d 974, 988 (N.D. Cal. 2015). The Court finds Ogogo met this burden.

Since Plaintiff has not adequately plead that E3 HR and Management Solution were her employers, Plaintiff's claims against E3 HR and Management Solution are DISMISSED WITHOUT PREJUDICE. Although Ogogo sufficiently alleges that she was employed by JayKay, the dismissal of E3 HR—the only diverse Defendant— means that this Court no longer retains subject matter jurisdiction under CAFA. See FAC at ¶¶ 12-14. Accordingly, the Court must remand the case pursuant to 28 U.S.C. § 1447(c). Polo v. Innoventions Int'l, LLC, 833 F.3d 1193, 1196 (9th Cir. 2016) ("The rule that a removed case in which the plaintiff lacks Article III standing must be remanded to state court under § 1447(c) applies as well to a case removed pursuant to CAFA . . .").

### III. ORDER

The Court DISMISSES WITHOUT PREJUDICE Ogogo's claims against Management Solution and E3. If Ogogo elects to amend her complaint with respect to these claims, she shall file a Second Amended Complaint within twenty (20) days of this Order. Defendants' responsive pleadings are due twenty (20) days

///
///
///
///

thereafter.  Absent amendment, the case against JayKay Medical Staffing Inc. will be remanded to San Joaquin Superior Court pursuant to 28 U.S.C. § 1447(c).

    IT IS SO ORDERED.

Dated: May 28, 2019

_____
JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE